845 So.2d 1194 (2003)
STATE of Louisiana
v.
Joseph JEROME, Jr.
No. 03-KA-126.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 2003.
*1195 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Margaret E. Hay, Terry M. Boudreaux, Nancy A. Miller, Assistant District Attorneys, Gretna, LA, for Appellee.
Bruce G. Whittaker, New Orleans, LA, for Appellant.
Panel composed of Judges EDWARD J. DUFRESNE, JR., JAMES L. CANNELLA and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant, Joseph Jerome Jr. appeals his conviction and sentence on the habitual offender bill of information.
On April 11, 2001, Jerome was charged with four counts of distribution of cocaine in violation of LSA-R.S. 40:967(A). He was convicted by a jury on all four counts. Jerome was originally sentenced to thirty years at hard labor on each count, with the sentences to run concurrently with one another. On October 26, 2001, Jerome *1196 filed a motion to reconsider sentence, which motion was denied.
Subsequently, the state filed a multiple offender bill of information charging Jerome as a third felony offender. After being advised of his rights, Jerome admitted the allegations of the bill. The trial court vacated his original sentence on Count One and he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. It is from this conviction and sentence that he appeals.
Because Jerome assigns errors only on his conviction on the multiple bill, we forego a narrative of the facts concerning the underlying offense. He argues that the trial court erred in failing to properly arraign him on the habitual offender bill of information and additionally erred in failing to properly advise him of his right to remain silent and of the right to have a formal hearing prior to his stipulation to the multiple bill.
On October 19, 2001, Jerome was sentenced on the four counts of distribution of cocaine. After sentencing, the State informed both him and the trial court of its intent to file a habitual offender bill alleging him to be a third felony offender. The trial judge stated, "Consider him arraigned, and then we can go to a hearing on it." Jerome contends that by this response, the trial court effectively waived his arraignment on the habitual offender bill.
This Court has held that a defendant waives his right to admit or deny the allegations in the multiple bill when he proceeds to the multiple offender hearing without objecting.[1] We note that a plea of "not guilty" was entered into the minutes of the court on October 19. In this case, Jerome proceeded to the multiple offender hearing on November 16, 2001 without lodging an objection; therefore, he waived his right to admit or deny the multiple bill's allegations at that time.
Jerome further argues that the trial court failed to properly advise him of his rights as set forth in LSA-R.S. 15:529.1(D), prior to his stipulation to the allegations in the multiple bill and prior to his signing the waiver of rights form. LSA-R.S. 15:529.1(D)(1)(a) requires that a defendant be advised of the specific allegation contained in the habitual offender bill and his right to a formal hearing at which the State must prove its case for the habitual offender status. Implicit in this requirement is the additional requirement that defendant be advised of his constitutional right to remain silent.[2] Where the defendant pleads or admits the allegations in the habitual offender bill of information, the failure to advise the defendant of his rights is reversible error.[3]
At the multiple offender hearing, Jerome's counsel informed the trial court that his client wished to stipulate to the allegations contained in the multiple bill. The trial judge then addressed Jerome as follows:
THE COURT:
Before I accept your plea, I've make [sic] sure you understand all of your rights with regard to the plea. First of all, by pleading guilty to be [sic] a triple *1197 felony offender you're giving up certain rights. You have a right to plead not guilty and have a trial on the matter. Do you understand that, sir?
DEFENDANT:
Yes, sir.
Afterwards, the trial judge additionally advised Jerome that the district attorney would have to prove (a) that he had a prior felony; (b) the appropriate time period between felonies; and (c) that he was properly advised of his rights at those proceedings. Further, the court advised that if he were to have a trial on the present matter, he would have the right to remain silent, the right to cross-examine all witnesses against him, and the right to call his own witnesses. After hearing the State's factual basis for Jerome's plea on the multiple offender bill, the court accepted his plea/admission as having been knowingly and intelligently given. Additionally, the record contains a document entitled "WAIVER OF RIGHTSPLEA OF GUITLY MULTIPLE OFFENDERLA. R.S. 15:529.1" that was signed by Jerome, the defense attorney, and the trial judge. Jerome initialed each separate paragraph on that form, including those that advised him of his right to remain silent and his right to a hearing.
We conclude that defendant was properly advised of his rights and that he knowingly and intelligently waived his rights, particularly his right to a formal hearing and his right to remain silent, prior to stipulating to the multiple offender bill of information.[4] This assignment of error is without merit.
Jerome argues that his sentence of life imprisonment imposed by the trial court is excessive. He contends that while he was properly sentenced under the pre-amendment version of LSA-R.S. 15:529.1 to life imprisonment, the trial court should have considered whether the ameliorative changes to the habitual offender statute merit a Dorthey[5] departure from a sentence of life imprisonment. Jerome contends on appeal that the change in the law is a significant factor that should have been considered by the court as a basis for departing from the "brutal mandate of the law." Jerome did not make any argument or introduce any evidence at the time of his sentencing on the multiple bill regarding a downward departure from the mandatory minimum sentence. On appeal, he argues that he has one prior conviction for a violation of the Uniform Controlled Dangerous Substances Law, and that his other predicate convictions were for simple possession of cocaine. He urges that if the amended statute were applicable, the sentencing range for this case would be between forty and sixty years.
In the present case, Jerome did not request that the trial court consider the ameliorative changes to the habitual offender statute during sentencing as a third felony offender, nor did he orally object to his sentence. Further, Jerome failed to file a motion to reconsider the multiple offender sentence as required by LSA-C.Cr.P. art. 881. The failure to file a motion to reconsider sentence or to state the specific grounds on which the motion is based, precludes a defendant from raising those grounds on appeal.[6] However, this *1198 Court has previously considered the issue of whether a sentence is constitutionally excessive even where no motion to reconsider sentence had been filed.[7]
The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness.[8] When a trial court determines that the minimum sentence mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment," or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive.[9] However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional.[10]
In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this Defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case."[11] When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Further, if the trial court finds clear and convincing evidence that justifies reducing the mandatory minimum sentence, the court cannot impose whatever sentence it may feel is appropriate. Rather, the trial court must impose the longest sentence that is not constitutionally excessive with specific reasons to explain why that sentence is the longest sentence that is not constitutionally excessive. A downward departure from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur in "rare situations."[12]
This court has stated that a trial judge may consider the legislative change in the penalty as evidence of its intent to make a downward departure, and although a life sentence may be mandatory, the trial judge is permitted to deviate from such sentence as imposed by LSA-R.S. 15:529.1 if he finds, and articulates in the record, that the mandated punishment is unconstitutionally excessive.[13] That the trial judge did not do so in the present case does not compel a conclusion that the sentence was excessive.
To the extent that Jerome attempts to argue that his predicate offenses were non-violent, a defendant's record of non-violent *1199 offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive.[14]
[t]his is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses.[15]
In the instant case, Jerome made no showing of exceptional circumstances to justify a downward departure, and thus failed to carry his burden of proving the sentence imposed was excessive. This assignment of error is without merit.
We have reviewed the record for errors patent,[16] and note the following. The trial court imposed defendant's sentences on the four counts of distribution of cocaine without specifying that five years of those concurrent sentences were to be served without benefit of parole, probation or suspension of sentence as required by the version LSA-R.S. 40:976(B) which was in effect at the time of the commission of defendant's offenses. However, we need not remand the matter for correction because the "without benefits" provision of a statute is self-activating.[17] Furthermore, as to count one, the matter became moot when defendant's sentence on that count was vacated and the trial court imposed a sentence of life imprisonment without benefit of parole, probation or suspension of sentence.
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] State v. Harris, 01-1380 (La.App. 5 Cir. 4/30/02), 817 So.2d 387, 389; State v. Allen, 93-838 (La.App. 5 Cir. 5/31/94), 638 So.2d 394, 403.
[2] State v. Johnson, 432 So.2d 815, 817 (La. 1983); State v. Walker, 01-348 (La.App. 5 Cir. 8/28/01), 795 So.2d 459, 463.
[3] Id.
[4] See e.g. State v. Ursin, 98-435 (La.App. 5 Cir. 10/28/98), 720 So.2d 1248.
[5] State v. Dorthey, 623 So.2d 1276 (La. 1993).
[6] State v. Mims, 619 So.2d 1059, 1060 (La. 1993); State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95), 653 So.2d 642, 646.
[7] State v. Williams, 00-1850 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 794; State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 789.
[8] State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Cushinello, 01-109 (La. App. 5 Cir. 7/30/01), 792 So.2d 926, 929, writ denied, 01-2505 (La.9/20/02), 825 So.2d 1159.
[9] State v. Dorthey, supra.
[10] State v. Johnson, 709 So.2d at 676; State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 226.
[11] State v. Harbor, supra.
[12] State v. Johnson, 709 So.2d at 677; State v. Hicks, 01-1064 (La.App. 5 Cir. 4/10/02), 817 So.2d 192, 200-201.
[13] State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377.
[14] State v. Hicks, supra.
[15] Id., quoting State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339, 345.
[16] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[17] State v. Williams, 00-1725 (La.11/29/01), 800 So.2d 790, 799.