STATE OF LOUISIANA

VERSUS

YERY GABRIEL RAMIREZ-DELGADO

NO. 24-KA-119

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-6568, DIVISION "M"
HONORABLE SHAYNA BEEVERS MORVANT, JUDGE PRESIDING

December 18, 2024

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and Timothy S. Marcel

<u>**SECOND DEGREE MURDER CONVICTION AND SENTENCE**</u>
<u>**AFFIRMED; OBSTRUCTION OF JUSTICE CONVICTION REVERSED**</u>
<u>**AND SENTENCE SET ASIDE; JUDGMENT OF NOT GUILTY FOR**</u>
<u>**OBSTRUCTION OF JUSTICE CHARGE ENTERED**</u>
    **SJW**
    **FHW**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Andrea F. Long
     Matthew Whitworth
     Leo M. Aaron

COUNSEL FOR DEFENDANT/APPELLANT,
YERY RAMIREZ
     Jane C. Hogan

**WINDHORST, J.**

In this criminal appeal, defendant/appellant, Yery Gabriel Ramirez-Delgado, appeals his convictions and sentences for second degree murder and obstruction of justice. For the following reasons, we affirm defendant's conviction and sentence for second degree murder, reverse defendant's conviction for obstruction of justice, and set aside defendant's sentence for obstruction of justice. Because the evidence was insufficient to convict, we render a judgment of not guilty on the obstruction of justice charge.

**PROCEDURAL HISTORY**

On November 7, 2019, a Jefferson Parish Grand Jury indicted defendant, Yery Gabriel Ramirez-Delgado, with second degree murder of Javier Navarro in violation of La. R.S. 14:30.1 (count one) and obstruction of justice in violation of La. R.S. 14:130.1 (count two).[1] Defendant was arraigned on August 1, 2022, and pled not guilty to both charges.

The State tried the case beginning on October 23, 2023 before a twelve-person jury, and on October 25, 2023, the jury found defendant guilty as charged on both counts. The trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on count one and imprisonment at hard labor for twenty-five years on count two, with both sentences to run concurrently. Defendant appeals his convictions for second degree murder and obstruction of justice.

**TRIAL EVIDENCE**

At trial, the testimony of Sabier Delacruz Polanco established that Mr. Polanco and Javier Navarro were at The Bunker, a bar on the East Bank of Jefferson Parish, in the early morning hours of August 3, 2019, and that defendant arrived at

---

[1] The indictment indicated defendant had fled the country to the Dominican Republic. By extradition, defendant returned to the United States in 2022.

the same bar at about 3:00 A.M.  Mr. Polanco did not see defendant and Mr. Navarro, the victim in this case, interact at the bar, but was aware defendant had problems with Mr. Navarro.[2]  After leaving the bar, Mr. Polanco and Mr. Navarro went to the IHOP on the West Bank of Jefferson Parish to eat breakfast.

Mr. Polanco testified that he drove to the IHOP, parked his white Infiniti car, and exited his vehicle.  He recalled that Mr. Navarro stayed inside the vehicle in the passenger seat.  A short time later, defendant arrived in a red Camaro and exited his car.  Mr. Polanco spoke to defendant and saw defendant pull a gun and walk towards Mr. Polanco's Infiniti.  Defendant struggled with the door, and once he opened it, defendant put his hand inside the car and fired his gun several times.  Mr. Polanco testified that after firing shots in the Infiniti, defendant then got into his Camaro and left the scene.  Mr. Polanco then called 9-1-1 and reported that his friend had been shot.[3]  Mr. Polanco positively identified defendant in court as the person who shot Mr. Navarro.

Detective Henry Dejean, who was with the Jefferson Parish Sheriff's Office (JPSO) at the time of the shooting, responded to the call regarding this shooting.  He testified that when he arrived, he saw the victim slumped over the center console inside the vehicle.  Detective Dejean requested assistance from a Spanish-speaking deputy to interview the eyewitness, Mr. Polanco, who only spoke Spanish.  Detective Dejean testified that six shell casings were found on the scene, one of which was found underneath the victim's body.

JPSO Detective Jesus Falcon, who was fluent in Spanish, testified that he took a statement from Mr. Polanco, during which he revealed the following.  Mr. Polanco and Mr. Navarro went to The Bunker, where they stayed for a while with no issues.  After the club closed and he and Mr. Navarro left, Mr. Navarro told Mr. Polanco he

---

[2] Mr. Polanco had heard that defendant and Mr. Navarro had a fight on a prior occasion.

[3] According to the 9-1-1 detail history report, Mr. Polanco made the 9-1-1 call at approximately 5:15 A.M.

had seen "Yeri Delgado," with whom he had "issues." Mr. Polanco told Mr. Navarro, "We're not here for that. We're not going to have any problems tonight. We're leaving." Mr. Polanco then instructed Mr. Navarro to follow him to his car.

Mr. Polanco told Detective Falcon they went to the IHOP, and defendant arrived soon thereafter. Because he knew Mr. Navarro and defendant had issues, he attempted to intervene, approached defendant, and said, "Listen, he's with me. We shouldn't have any problems. We're Dominican, let's get along." According to Mr. Polanco, defendant said, "This has nothing to do with you."

In his statement, Mr. Polanco said that defendant pulled a firearm from his waistband, walked over to the passenger side of his vehicle where Mr. Navarro was seated, and began to shoot into the vehicle. Detective Falcon recalled that Mr. Polanco stated that defendant then pointed the weapon at him, after which defendant left the scene in his Camaro. Detective Falcon confirmed that the video surveillance corroborated what Mr. Polanco said happened.

Detective Falcon testified that he showed Mr. Polanco a six-person photographic lineup and, that Mr. Polanco positively identified defendant as the person who shot Mr. Navarro. Mr. Polanco also positively identified a photograph of a vehicle as defendant's Camaro.

Dr. Ellen Connor, who was qualified as an expert in the field of forensic pathology, testified that her autopsy of Mr. Navarro revealed that he sustained eight gunshot wounds mostly to his back, several of which would have potentially been fatal on their own, including the ones that went through his heart, liver, right lung, and aorta. Dr. Connor confirmed that Mr. Navarro's cause of death was multiple gunshot wounds and that his death was a homicide.

Retired JPSO Detective Donald Zanotelli testified that he reviewed IHOP's surveillance video, which showed the homicide. This video was shown to the jury. Detective Zanotelli also reviewed video from the Automated License Plate Reader

(ALPR) cameras, which showed defendant's Camaro leaving the IHOP shortly after the homicide. He explained that the Camaro was tracked to the long-term parking lot at the New Orleans International Airport. Detective Zanotelli confirmed that the Camaro's license plate was registered to defendant.

JPSO Captain Dennis Thornton testified that police determined defendant parked the Camaro at the airport shortly after the homicide on August 3, 2019, at 5:47 A.M. Captain Thornton also testified that police obtained a Passenger Name Report, showing defendant bought an American Airlines plane ticket from New Orleans to Dallas-Fort Worth and then from Dallas-Fort Worth to the Dominican Republic.

The police obtained a search warrant for defendant's vehicle, the Camaro, and upon searching it, found a Smith and Wesson pistol in the center console. Jene Rauch, who was qualified as an expert in the field of firearm and toolmark examinations, tested the gun and confirmed that the casings and the projectiles removed from the victim were fired from the firearm recovered from the Camaro.

Detective Zanotelli testified that he drafted an arrest warrant and that after a long, slow process, they were able to have defendant transported back from the Dominican Republic to the United States, where he was arrested in March of 2022.

**LAW and ANALYSIS**

On appeal, defendant asserts the evidence is insufficient to convict him of second degree murder and obstruction of justice. Defendant also asserts that the photographs of the deceased victim and testimony from the victim's mother were prejudicial and prevented him from having a fair trial. Finally, defendant claims that translation errors made by the translator deprived him of the constitutional right to due process.

**Sufficiency of the Evidence**

In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, the appellate court does not consider whether the evidence at trial established guilt beyond a reasonable doubt, but instead, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. State v. Garrison, 19-62 (La. App. 5 Cir. 4/23/20), 297 So.3d 190, 203, writ denied, 20-00547 (La. 9/23/20), 301 So.3d 1190.

It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Havies, 22-133 (La. App. 5 Cir. 12/22/22), 355 So.3d 677, 687, writ denied, 23-76 (La. 9/19/23), 370 So.3d 463. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. Id., citing State v. Garrison, 297 So.3d at 204.

### Second Degree Murder

With respect to his second degree murder conviction, defendant asserts that he should have been convicted of manslaughter, not second degree murder. Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1 A(1). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent to kill can be inferred from the intentional use of a deadly weapon, such as a knife or a gun, State v. Knight, 09-359 (La. App. 5 Cir.

2/9/10), 34 So.3d 307, 317, from the circumstances and the defendant's actions, and the extent and severity of the victim's injuries. State v. Graves, 99-113 (La. App. 5 Cir. 8/31/99), 740 So.2d 814, 816, writ denied, 99-3013 (La. 3/31/00), 759 So.2d 68.

Whether a defendant possessed the requisite intent in a criminal case is a question for the finder of fact, and a review of the correctness of this determination is under the Jackson standard. State v. Patterson, 10-415 (La. App. 5 Cir. 1/11/11), 63 So.3d 140, 148, writ denied, 11-338 (La. 6/17/11), 63 So.3d 1037; State v. Gonzalez, 07-449 (La. App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied, 08-228 (La. 9/19/08), 992 So.2d 949. A trier of fact may infer a guilty conscience from a defendant's flight and attempt to avoid apprehension. State v. Leach, 22-194 (La. App. 5 Cir. 12/28/22), 356 So.3d 531, 543.

In order for defendant to have been convicted of manslaughter, the evidence would have had to show that the homicide was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31 A(1); State v. Hicks, 01-1064 (La. App. 5 Cir. 4/10/02), 817 So.2d 192, 197, writ denied, 02-1580 (La. 5/30/03), 845 So.2d 1068. Sudden passion and heat of blood distinguish manslaughter from murder, but they are not elements of the offense. Instead, they are mitigating factors that may reduce the grade of the offense. State v. Patterson, 63 So.3d at 150.

Whether sufficient provocation existed for the reduction of the offense to manslaughter is a question to be determined by the jury under the standard of the average or ordinary person, one with ordinary self-control. Patterson, 63 So.3d at 150. An argument with the victim alone does not constitute sufficient provocation to reduce murder to manslaughter. State v. Thompson, 18-273 (La. App. 5 Cir. 11/28/18), 259 So.3d 1257, 1266-67, writ denied, 18-2077 (La. 9/6/19), 278 So.3d 372. Provocation and time for cooling are questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. Id.

The question for the court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. State v. Arias-Chavarria, 10-116 (La. App. 5 Cir. 9/28/10), 49 So.3d 426, 432, writ denied, 10-2432 (La. 2/25/11), 58 So.3d 460.

At trial, there was no evidence of an altercation or argument between defendant and the victim, Mr. Navarro, the night before the shooting. There was also no evidence that Mr. Navarro provoked defendant in anyway before the shooting. The mere fact that defendant and Mr. Navarro had issues at some point before the shooting is entirely insufficient to support reducing a second degree murder conviction to manslaughter.

The testimony at trial established that defendant discharged a firearm several times at Mr. Navarro. Notably, Dr. Connor testified several of the gunshot wounds would have potentially been fatal on their own, including the ones that went through his heart, liver, right lung, and aorta. In addition, eyewitness accounts of the shooting and identification of defendant as the shooter, which are corroborated by surveillance footage, supported a finding beyond a reasonable doubt that defendant was the individual who aimed a gun and discharged it at the victim.

When the factfinder at trial reasonably rejects the hypothesis of innocence advanced by the defendant, "that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." State v. Mack, 13-1311 (La. 5/7/14), 144 So.3d 983, 989. A reasonable alternative hypothesis is a sufficiently reasonable hypothesis that a rational jury could not have found proof of guilt beyond a reasonable doubt, not merely one that could explain the events in an exculpatory fashion. Id. The Jackson standard does not provide a reviewing court with a vehicle for substituting its own appreciation of what the evidence has or has not proved for that of the factfinder. Id.

Accordingly, in viewing the evidence in a light most favorable to the prosecution, we find the evidence sufficient to support defendant's conviction for second degree murder. We also find defendant failed to show by a preponderance of the evidence that the mitigating factors necessary to reduce his conviction to manslaughter were present.

### *Obstruction of Justice*

Defendant also challenges his conviction for obstruction of justice under La. R.S 14:130.1, which provides that the crime of obstruction of justice, when committed with the knowledge that such act may affect a criminal proceeding, includes "[t]ampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding." This provision also states that "[t]ampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance" at the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any law enforcement investigation. Here, the indictment specified that defendant obstructed justice by "tampering with evidence by removing the handgun he used to shoot the victim off of the crime scene and concealing it within his vehicle which he parked at Louis Armstrong International Airport before purchasing a one way ticket and fleeing the country to the Dominican Republic."

Under La. R.S. 14:130.1 A(1), obstruction of justice is a specific intent crime. State v. Lopez, 23-335 (La. App. 5 Cir. 8/21/24), — So.3d —, 2024 WL 3885502. A defendant acts with "specific intent" when circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. La. R.S. 14:10(1). The State must prove each element of the crime beyond a reasonable doubt. State v. Helou, 02-2302 (La. 10/23/03), 857 So.2d 1024, 1027, citing Jackson, *supra*. In order to convict the defendant of obstruction of justice by tampering with

evidence in this case, pursuant to La. R.S. 14:130.1 A(1) the State was required to prove: (1) the obstruction was committed "with the knowledge that such act has, reasonably may, or will affect an actual or potential, past, or future criminal proceeding"; (2) defendant tampered "with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding"; (3) the tampering was by the intentional "alteration, movement, removal, or addition of any object or substance"; *and* (4) the tampering was done "at the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation" by law enforcement officers. State v. Jones, 07-1052 (La. 6/3/08), 983 So.2d 95, 101-102.

Based on the record, we find the evidence was insufficient to prove defendant intentionally moved or removed the gun from the scene or that he did so with the specific intent of distorting the results of a criminal investigation or proceeding.

In State v. Scott, 23-22 (La. App. 4 Cir. 8/30/23), 372 So.3d 42, 54, writs denied, 23-1317, 23-1318 (La. 3/19/24), 381 So.3d 707, the defendant contended there was insufficient evidence to convict him of obstruction of justice, because the State did not definitively prove the defendant removed the firearm from the crime scene. The State responded that the evidence was sufficient to convict the defendant of obstruction of justice, because there was ample evidence for the jury to conclude that he fled the scene with the assault rifle he used to shoot the victims. Id. at 55. The State explained that video surveillance showed the defendant fleeing the scene, but there was no footage of the defendant leaving the rifle at the scene and the police never recovered rifle. Id.

In finding the evidence insufficient to support the obstruction of justice conviction, the Fourth Circuit held that, mere evidence the defendant fled the crime scene with the rifle was not sufficient to prove beyond a reasonable doubt that he

possessed the specific intent to distort the police investigation. Scott, 372 So.3d at 55. The court reasoned the defendant's purported specific intent to distort the results of the police investigation when he left the crime scene with the gun is contradicted by the fact that he left behind shell casings (instead of collecting the shell casings ejected from his rifle), video surveillance (instead of destroying the video surveillance that documented his presence in the neighborhood shooting at the SUV), and witnesses (instead of harming the witnesses that were outside on the street at the time of the shooting incident). Id. The Fourth Circuit explained, based on this evidence, a rational juror could have inferred that, in taking the firearm with him, the defendant gave no thought to interfering with the results of a criminal investigation or proceeding. Id.

Other cases have required more than merely leaving the scene of the crime with the murder weapon to support an obstruction of justice conviction. Recently, in State v. Alexander, 23-540 (La. App. 4 Cir. 4/23/24), —— So.3d ——, 2024 WL 1737390, the defendant was convicted of second degree murder and obstruction of justice, where the gun used in the shooting was never recovered. In affirming the obstruction of justice conviction, the Fourth Circuit acknowledged its prior decision in Scott, *supra*, but pointed out the State had presented additional evidence that the defendant had also deleted records of a phone call to a cab company requesting transportation to the area where the murder occurred.

In State v. Bethley, 22-849 (La. App. 4 Cir. 6/21/23), 368 So.3d 1148, 1155, writ denied, 23-965 (La. 1/17/24), 377 So.3d 242, the defendant, during his testimony, when questioned about the whereabouts of the firearm, responded evasively to the question and never provided a direct answer. The court found this evidence reasonable to infer that defendant left the scene of an incident, with the firearm, that he knew it would be the subject of a criminal investigation. Id.

In the present case, even if defendant removed the gun from the scene of the shooting, the evidence was insufficient to prove, beyond a reasonable doubt, that he had the specific intent to distort the results of a criminal investigation or proceeding. Defendant left the crime scene with the gun used to shoot the victim in a vehicle registered in his name. Defendant drove to the New Orleans International Airport and then left the gun in the vehicle. Video surveillance showed the vehicle defendant occupied leaving the crime scene. Police easily located the vehicle and the gun from defendant's vehicle the day of the shooting. As in Scott, defendant here did not collect the shell casings from the crime scene, destroy any surveillance footage of him, or harm the person who witnessed the shooting. In this case, there was no testimony or evidence that defendant discussed hiding or destroying the gun from the scene with anyone after the shooting. The evidence presented does not show that, in taking the gun with him, defendant gave any thought to interfering with the results of a criminal investigation or proceeding.

For the foregoing reasons, we find the evidence was insufficient to prove the required elements of obstruction of justice beyond a reasonable doubt. Accordingly, we reverse defendant's obstruction of justice conviction and set aside his sentence therefore. We render a judgment of acquittal on the obstruction of justice charge.

**Prejudicial Evidence**

Defendant asserts the admission of 12 photographs of the victim after death combined with victim-impact testimony from the victim's mother deprived defendant of a fair trial in violation of his due process rights.

As to the photographs, the record indicates that prior to trial, defendant objected to the use of 20 autopsy photographs the State intended to use at trial. Defendant argued that the photographs were cumulative and that some of them were quite graphic and therefore prejudicial. As a result, the trial court narrowed the use of photographs to 12 it found were relevant. The State agreed to limit its use of the

challenged photographs to these 12, and defendant indicated to the court that limiting the photographs to these 12 would resolve his objection to the cumulative nature of the photographs.[4] At trial, defendant did not object to the admission of the 12 photographs into evidence.

La. C.Cr.P. art. 841 A provides:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. State v. Sly, 23-60 (La. App. 5 Cir. 11/2/23), 376 So.3d 1047, 1076, writ denied, 23-1588 (La. 4/23/24), 383 So.3d 608; State v. Anthony, 17-372 (La. App. 5 Cir. 12/30/20), 309 So.3d 912, 927, writ denied, 21-176 (La. 10/12/21), 325 So.3d 1067. Grounds for the objection must be stated contemporaneously during the trial so that opposing counsel can respond, and if the objection is meritorious, the trial judge may be given an opportunity to take corrective action. Id.; State v. Benoit, 17-187 (La. App. 5 Cir. 12/29/17), 237 So.3d 1214.

The record indicates the trial court permitted the State to introduce a limited set of 12 autopsy photographs at trial for the purpose of corroborating the testimony of the forensic pathologist, Dr. Connor. Prior to trial, defendant informed the trial court that the admittance of 12 photographs resolved his objections, and defendant did not object at trial to the admission of the 12 photographs. As a result, we conclude that defendant did not properly preserve this issue for appeal.

---

[4] The trial judge pointed out that there were 71 autopsy photographs that would not be published but would be admitted for record purposes only.

Defendant also asserts the victim-impact testimony from the victim's mother and the admission of a photograph of the victim was inflammatory and deprived defendant of a fair trial.

Louisiana jurisprudence recognizes and permits "victim impact" evidence or testimony, relating either to the individuality of the victim or the impact of the crime on the victim's survivors, during the penalty phase of capital cases. State v. Sly, 23-60 (La. App. 5 Cir. 11/2/23), 376 So.3d 1047, 1088, writ denied, 23-1588 (La. 4/23/24), 383 So.3d 608. Victim-impact evidence not offered in the penalty phase to illustrate the impact of the crime should not be described as victim impact. Id. While "some facts about the victim, including some personal characteristics, are frequently developed at the guilt phase of the trial (on issues such as self-defense and justification)," such evidence is not victim impact, and the admissibility of such evidence should be determined in light of its relevancy under La. C.E. arts. 401, *et seq*. Id. at 1089.

Victim-impact testimony and evidence has been found not to be prejudicial when it merely humanized the deceased victim and did not overly detail the victim's good qualities. State v. Taylor, 01-1638 (La. 1/14/03), 838 So.2d 729, 752; State v. Seals, 09-1089 (La. App. 5 Cir. 12/29/11), 83 So.3d 285, 334. Here, the State's questioning of the victim's mother was not extensive. The testimony and the victim's photograph merely humanized the victim and did not involve a discussion of the victim's character or good qualities. When the victim's mother became emotional, the State ceased its questioning of her. We therefore do not find the State's questioning of the victim's mother or the admission of the victim's photograph to be prejudicial or improper. These assignments of error lack merit.

### *Translator Issues*

Defendant claims the interpreter's failure to properly translate some testimony during the only eye-witness testimony deprived defendant of his due process right

to a fundamentally fair proceeding.  Defendant's claim is based upon the interpreter informing the trial court after the testimony of Sabier Alejandro Delacruz Polanco that she had mispronounced a name during the translation of Mr. Polanco's testimony.  At the trial judge's instruction, and without defense objection, the interpreter clarified for the jury that during Mr. Polanco's testimony, when Mr. Polanco had said the name "Yery," it sounded like "Jeremy."  As a result, the interpreter explained to the jury she had said "Jeremy" a couple of times during the translation when the name was actually "Yery."

Because defendant did not object at the time, defendant did not preserve this issue for appeal.  La. C.Cr.P. art. 841.  In addition, the record indicates that the translation issue in this case merely pertained to the pronunciation of defendant's name, and that the interpreter clarified the issue by explaining the error to the jury.  Accordingly, this assignment of error lacks merit.

**ERRORS PATENT**

We have reviewed the record for errors patent according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990).

The transcript reflects that defendant was not properly informed of the period for seeking post-conviction relief under La. C.Cr.P. art. 930.8.  If a trial court does not properly advise a defendant pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion.  State v. Becnel, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022.

Accordingly, by way of this opinion, we inform defendant that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

24-KA-119                                    14

**DECREE**

For the foregoing reasons, we affirm defendant's conviction and sentence for second degree murder. We reverse defendant's conviction for obstruction of justice, and set aside defendant's sentence for obstruction of justice. Because the evidence was insufficient to convict, we render a judgment of not guilty for the obstruction of justice charge against defendant.

**SECOND DEGREE MURDER CONVICTION AND SENTENCE AFFIRMED; OBSTRUCTION OF JUSTICE CONVICTION REVERSED AND SENTENCE SET ASIDE; JUDGMENT OF NOT GUILTY FOR OBSTRUCTION OF JUSTICE CHARGE ENTERED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 18, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-119

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE SHAYNA BEEVERS MORVANT (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)        THOMAS J. BUTLER (APPELLEE)        JANE C. HOGAN (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
LEO M. AARON (APPELLEE)
MATTHEW WHITWORTH (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053