JOHNSON, J.
Defendant/Appellant, Larry Thompson, appeals his conviction for second degree murder and life sentence without the benefit of probation, parole, or suspension of sentence from the 29th Judicial District Court, Division "E". For the following reasons, we affirm Defendant's conviction and sentence for second degree murder, affirm, as amended, his sentence for obstruction of justice, and remand the matter to the trial court with instructions.
FACTS AND PROCEDURAL HISTORY
On August 1, 2016, a St. Charles Parish Grand Jury indicted Defendant, charging him with the second degree murder of *1261 David Scott, in violation of La. R.S. 14:30.1 (count one); with possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (count two); with aggravated battery, in violation of La. R.S. 14:34 (count three); and with obstruction of justice, in violation of La. R.S. 14:130.1 (count four). Defendant pleaded not guilty to the charged offenses at his arraignment on August 5, 2016. On October 19, 2016, Defendant's motion to sever offenses was granted, and count two of the indictment was severed.
Trial commenced on July 17, 2017 before a 12-person jury for the second degree murder and obstruction of justice charges.[1] At trial, Deputy Steven Mahan of the St. Charles Parish Sheriff's Office testified that he was on patrol in the early morning hours of December 26, 2014. While on patrol, he received a call that shots were fired at the "Butt Cuts Bar" on Joe Louis Lane in Hahnville.[2] He described that, when he arrived, the scene was very chaotic with people trying to exit the bar. When he got inside the bar, Deputy Mahan observed the victim, David Scott, lying on the floor in medical distress after being shot; and, he then started CPR on the victim. He testified that he did not observe the victim with a weapon, there was no weapon nearby, and no one at the scene informed him that the victim was seen with a weapon. Later, Deputy Mahan was sent to the hospital to take a statement from a witness, Rollan Martin. Mr. Martin advised Deputy Mahan that he was shot in the foot while dancing in the bar. At that time, Mr. Martin did not tell Deputy Mahan that he saw the victim with a weapon in his hands.
Detective Don Murray with the St. Charles Parish Sheriff's Office testified that he and Defendant are cousins. As an assisting detective, he reviewed the surveillance video from the bar from the night of the shooting. He identified the victim in the footage with the victim's cousin, Jermaine Scott.[3] As some point in the footage, Detective Murray was able to identify Defendant in the video. The video depicted Defendant exiting the bar but returning approximately two minutes later. Approximately a minute after Defendant re-enters the bar, the crowd disperses due to shots being fired, and Defendant was seen exiting the bar.
Jermaine Scott, the victim's cousin, testified that on the evening of December 25, 2014, he, the victim, Kasheena Pierre, and Keman Jacobs decided to go to "Butt Cuts Bar" to hang out. He recalled that they were just there having fun when he noticed Defendant. As he was returning from the bathroom, he noticed an altercation began between David Scott and Defendant. Defendant and Ms. Pierre were in a previous relationship and had a child together; however, the victim was Ms. Pierre's new boyfriend. While Mr. Scott described the encounter as "rowdy," he did not see the victim throw a punch at Defendant or either of them actually hit each other. Mr. Scott further testified that the victim did not have a gun, baseball bat, sword or knife on him that night. He described the bar as very crowded, loud and *1262 dark, and that he was not sure exactly what happened between the two men. Mr. Scott stated that he heard a gunshot and saw that Defendant "had his hands down" but did not recognize what was in his hand. He described that he saw Defendant shooting toward someone on the ground. Mr. Scott ran over to the victim, and the victim subsequently died in his arms. Mr. Scott testified that he did not see the victim do anything to Defendant that warranted being shot. On cross-examination, Mr. Scott testified that he told the police that he attempted to calm down the victim and diffuse the altercation between Defendant and the victim, but the victim resisted his attempts.
Kasheena Pierre testified that she had been dating the victim for a few months and spent Christmas evening with him. She testified that she had neither known him to carry a weapon nor was she aware if he had a gun or weapon on his person on the evening of the shooting. She described that around 10:30 p.m. that evening, she, the victim, and Mr. Scott went to "Butt Cuts Bar," which happened to be very crowded. She recognized many people in the bar, including Defendant, her ex-boyfriend. Ms. Pierre testified that she did not see the victim threaten, punch, provoke, or fight with Defendant. She described that, at some point in the evening, she saw Defendant leave the dance floor, but then later saw him return into the bar. She recounted that she was dancing with the victim when she heard the first gunshot, the victim pushed her out of the way, and she fell to the ground. Ms. Pierre heard more gunshots, and when she made it back to the victim, she did not see a gun in his hand or anywhere near him.
On cross-examination, Ms. Pierre testified that she told police that she was trying to calm the victim, so they could leave the bar. She described that, as she was dancing with the victim, she could feel the tension between Defendant and the victim. When asked if it was her impression that the victim was becoming aggressive with Defendant, she responded that she "just felt a vibe" and insisted that they leave.
Detective Thomas Plaisance was one of the crime scene technicians who processed the scene at "Butt Cuts Bar." He described that, a few days after he initially processed the scene, he obtained a warrant to further search the bar. During that search, he discovered a bullet hole in the dance floor. He was able to remove that section of the flooring and recover a lead projectile. He testified that other than this projectile, he found no other projectiles or shell casings at the scene that indicated the use of a revolver. Detective Plaisance testified that he found no evidence that a second weapon was used. At the victim's autopsy the morning following the shooting, Detective Plaisance recovered three additional projectiles from the victim's body, specifically from his chest cavity, rear neck, and back spine area. On cross-examination, Detective Plaisance admitted that it was not impossible for another projectile to be somewhere unknown in the building, as the police report reflected that the security guard heard approximately five gunshots, but he also noted that it was also not impossible that a witness would mistake four gunshots for five gunshots. He further testified that he believed the victim's hands were bagged for gunshot residue testing, but to his knowledge, no such testing was requested.
Dr. Samantha Huber, the chief forensic pathologist in Orleans Parish, was qualified as an expert in the field of forensic pathology. She performed the autopsy in this case. She stated that the gunshot wound the victim sustained to the back of his neck had a lack of stippling, which indicated to her that the gun was at least 18 inches away from the victim's head when fired. She opined that this wound *1263 was not lethal. When discussing the gunshot wound the victim sustained to his chest, she described that the bullet traveled backwards toward the spinal cord and transected it. She stated the entry wound sustained to the victim's back lodged itself in his lung, as the bullet was moving from his back to the front. Dr. Huber concluded that the victim's cause of death was multiple gunshot wounds.
Defendant called Rollan Martin as a witness. He testified that he arrived at "Butt Cuts Bar" on December 25, 2014, at approximately 9:00 p.m. He described that he saw Defendant, his uncle, at the bar. He also observed Ms. Pierre at the bar with someone he was unfamiliar with but knew of his family. He testified that he was shot in his foot that evening, as he was standing on the right side of the dance floor, and that the victim was standing by the bar. After he was shot, Mr. Martin stated he ran to the bathroom where he stayed for about 10 minutes, until the crowd died down. Mr. Martin testified that he saw the victim with a gun and believed that the victim shot him. While he indicated he was "a hundred percent sure" he saw the victim with a gun, he did not know what happened to that gun after the shooting. Mr. Martin also testified that he did not see Defendant with a gun.
Mr. Martin recalled that the police spoke with him at the hospital, but that he was so intoxicated that he could not give any information. He conveyed that, although Defendant was related to him, he did not have a motive to lie on Defendant's behalf. On cross-examination, Mr. Martin admitted that he had been drinking Hennessey and beer from the time he arrived at the bar at 9:00 p.m. until the shooting at about 12:30 a.m., but he could not remember how many drinks he had. He also admitted that he was under the age of 21 years old at the time of the incident.
At the conclusion of the trial, on July 19, 2017, the jury found Defendant guilty as charged on both counts. On September 6, 2017, Defendant filed a motion for new trial and motion for post-verdict judgment of acquittal, arguing, inter alia , that the judgment of acquittal should be granted, finding Defendant guilty of the lesser and included offense of manslaughter. On September 14, 2017, the trial court denied both of the motions.
On September 22, 2017, the trial court sentenced Defendant on count one-second degree murder-to life imprisonment without the benefit of probation, parole, or suspension of sentence, and on count two-obstruction of justice-to 40 years imprisonment without the benefit of probation, parole, or suspension of sentence. The trial court further ordered that these sentences run consecutively to each other. On the same date, Defendant filed a motion to reconsider sentence, which was denied by the trial court after a hearing on December 12, 2017. Subsequently, Defendant filed a motion for appeal, which was granted on December 20, 2017.
ASSIGNMENTS OF ERROR
On appeal, Defendant alleges the trial court erred in denying his motion for post-verdict judgment of acquittal because the evidence presented at trial was insufficient to support a conviction of second degree murder, and the trial court erred in sentencing him to an excessive sentence of life imprisonment.
LAW AND ANALYSIS
Sufficiency of Evidence [4]
In this assignment of error, Defendant argues that the jury committed manifest *1264 error by returning a guilty verdict for second degree murder, when the facts at trial illustrated that the responsive verdict of manslaughter was more appropriate; and as a result, the trial court should have granted his motion for post-verdict judgment of acquittal. He contends that his blood had not cooled from the moment he engaged in a heated argument with the victim. Defendant requests that this Court vacate his conviction for second degree murder and enter a verdict of the lesser and included offense of manslaughter.
The State responds that there was sufficient evidence adduced at trial to support Defendant's conviction for second degree murder. The State contends evidence at trial proved that the victim was not the aggressor and there was no evidence that the victim possessed a gun. The State maintains that the facts of the case do not fit the requirements for a manslaughter conviction because Defendant left the bar and returned to shoot the victim, which was enough time for his blood to cool.
Defendant filed a motion for new trial[5] and motion for post-verdict judgment of acquittal. In his motion for post-verdict judgment of acquittal, he argued that the court should have vacated the verdict of second degree murder and convicted him of the more appropriate verdict of manslaughter. He argued that the State's expert was not able to exclude the possibility that two guns were fired at the scene, and that the State had not refuted Defendant's claim of self-defense; therefore, the State failed to meet the burden of excluding every reasonable hypothesis of innocence. He maintained that the State did not eliminate the reasonable possibility that he acted in self-defense or that the victim was shot by a different gun fired by someone else in the crowded bar.
At the hearing on the motion, Defendant further pointed out that his witness, Mr. Martin, testified that the victim was armed with a gun prior to being shot. Defendant contended the State did not refute his self-defense claim beyond a reasonable doubt. He also argued that the court should have considered a verdict of manslaughter to be more appropriate. Defendant contended that he was intoxicated at the time, which could negate the specific intent to kill. He also argued that the victim was acting in an aggressive manner, and that the victim was the initial aggressor. The State responded that there was no evidence introduced that Defendant was intoxicated at the time of the incident, and no argument concerning the victim's intoxication raised at trial. The State further contended that there was no evidence that the victim provoked Defendant to such a degree that a reasonable person would have lost self-control or cool reflection.
In denying the motion for post-verdict judgment of acquittal, the trial court found:
based on the evidence presented, that the jury found that the State met its burden by presenting evidence which proved beyond a reasonable doubt that Mr. Thompson killed Mr. Scott with specific intent and specifically rejected Mr. Thompson's claim of self-defense. There was conflicting testimony presented by the State and the defense concerning what occurred that night as it related to his claim of self-defense. The jury made credibility determinations of the witnesses in reaching its verdict. This *1265 Court does not disagree with the jury's determination or evaluation of the witnesses' credibility.
The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal. See La. C.Cr.P. art. 821 ; State v. Hooker , 05-251 (La. App. 5 Cir. 1/17/06), 921 So.2d 1066, 1074. Here, Defendant only raises the argument that the evidence supported a conviction for manslaughter, not second degree murder; as such, the trial court erred in denying Defendant's post-verdict judgment of acquittal. Unlike in his post-verdict motion, he does not argue on appeal that the State failed to negate his claim of self-defense beyond a reasonable doubt.[6]
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See State v. Ortiz , 96-1609 (La. 10/21/97), 701 So.2d 922, 930, cert. denied , 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998) ; State v. Smith , 12-247 (La. App. 5 Cir. 12/11/12), 106 So.3d 1048, writ denied , 13-0494 (La. 7/31/13), 118 So.3d 1120.
Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Smith at 1053 ; State v. Harrell , 01-841 (La. App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. "Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience." State v. Shapiro , 431 So.2d 372, 378 (La. 1982). In instances involving circumstantial evidence, La. R.S. 15:438 dictates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Smith at 1053,.
*1266 When the trier of fact is faced with conflicting testimony, the weight of the testimony lays solely with the jury or judge, who may accept or reject, in whole or in part, the testimony of any witness. State v. Williams , 05-59 (La. App. 5 Cir. 5/31/05), 904 So.2d 830, 833 ; State v. Bradley , 03-384 (La. App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied , 03-2745 (La. 2/13/04), 867 So.2d 688. It is therefore, not the function of the appellate court to assess credibility or reweigh the evidence; rather, a reviewing court must consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. State v. Williams , 98-1146 (La. App. 5 Cir. 6/1/99), 738 So.2d 640, 648, writ denied , 99-1984 (La. 1/7/00), 752 So.2d 176 ; State v. Juluke , 98-0341 (La. 1/8/99), 725 So.2d 1291. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by a defendant offers an exculpatory explanation of events. State v. Mitchell , 09-996 (La. App. 5 Cir. 5/25/10), 40 So.3d 1122, 1127, writ denied , 10-1557 (La. 10/21/11), 73 So.3d 370. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt. Id. ; See also State v. Mitchell , 99-3342 (La. 10/17/00), 772 So.2d 78, 83.
Defendant was convicted of second degree murder of David Scott. Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm.[7] La. R.S. 14:30.1(A)(1). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). The determination of specific intent is a question of fact. State v. Durand , 07-4 (La. App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, writ denied , 07-1545 (La. 1/25/08), 973 So.2d 753. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person, as well as the extent and severity of the victim's injuries. State v. Hoffman , 98-3118 (La. 4/11/00), 768 So.2d 542, 585, cert. denied , 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000) ; State v. Batiste , 06-869 (La. App. 5 Cir. 4/11/07), 958 So.2d 24, 27.
In order for Defendant to have been convicted of manslaughter, the evidence would have had to show that the homicide was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1) ; State v. Hicks , 01-1064 (La. App. 5 Cir. 4/10/02), 817 So.2d 192, 197, writ denied , 02-1580 (La. 5/30/03), 845 So.2d 1068. Sudden passion and heat of blood distinguish manslaughter from murder, but they are not elements of the offense. Instead, they are mitigating factors that may reduce the grade of the offense. State v. Patterson , 10-415 (La. App. 5 Cir. 1/11/11), 63 So.3d 140, 150, writ denied , 11-338 (La. 6/17/11), 63 So.3d 1037. The defendant has the burden of proving those mitigating circumstances by a preponderance of the evidence. Id.
Whether sufficient provocation existed for the reduction of the offense to manslaughter is a question to be determined by the jury under the standard of the average or ordinary person, one with ordinary self-control. Patterson at 150. An argument alone does not constitute sufficient *1267 provocation to reduce murder to manslaughter. State v. Johnson , 06-623 (La. App. 3 Cir. 11/2/06), 941 So.2d 696, 702, writ denied , 06-3024 (La. 9/14/07), 963 So.2d 995. Provocation and time for cooling are questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. The question for the court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. State v. Arias-Chavarria , 10-116 (La. App. 5 Cir. 9/28/10), 49 So.3d 426, 432, writ denied , 10-2432 (La. 2/25/11), 58 So.3d 460.
In State v. Mills , 04-489 (La. App. 5 Cir. 3/29/05), 900 So.2d 953, 961, writ denied , 05-1470 (La. 1/13/06), 920 So.2d 235, the defendant similarly argued that the evidence only supported a conviction for manslaughter.[8] This Court found that the jury could have reasonably concluded that the verbal argument was insufficient provocation to deprive an average person of his self-control. The victim had simply told the defendant to leave the recording studio that the victim owned. The record established no punches were thrown during the verbal altercation. Additionally, the shooting occurred only after the defendant left the room and returned with a gun. Given those circumstances, this Court found that the defendant failed to show by a preponderance of the evidence that the verbal argument constituted sufficient provocation so as to warrant only a verdict of manslaughter.
In the present case, the facts at trial showed that Defendant and the victim engaged in a verbal altercation while inside the bar. However, testimony also established that neither the victim nor Defendant threw a punch, or that their conflict became physical prior to the shooting. It has been held that mere words or gestures, however offensive or insulting, will not reduce a homicide from murder to manslaughter. Arias-Chavarria , supra ; State v. Mitchell , 39,202 (La. App. 2 Cir. 12/15/04), 889 So.2d 1257, 1263, writ denied , 05-0132 (La. 4/29/05), 901 So.2d 1063. Mere words or gestures, however offensive or insulting, will not reduce a homicide from murder to manslaughter. Id.
Multiple witnesses for the State testified to the fact that the victim was not armed with a gun at the time of the incident; however, Defendant's only witness testified contrarily that he saw the victim with a gun. We note that when Mr. Martin initially spoke with police, he did not mention that he saw the victim with a gun. Additionally, no gun was found at the scene at all, much less around or near the victim. When weighing the conflicting and inconsistent testimony, the jury obviously found the State's witnesses more credible than the witness for Defendant. Moreover, while the ballistics expert could not conclusively exclude the possibility that a second gun was used, it was opined that it would have been a "pretty interesting coincidence" to have a totally different firearm used. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. State v. Jones , 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240. The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. Id. It is not the function of the *1268 appellate court to second guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence. Id. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. Miller , 11-498 (La. App. 5 Cir. 12/13/11), 84 So.3d 611, 617, writ denied , 12-176 (La. 9/14/12), 97 So.3d 1012.
The testimony at trial established that Defendant discharged a firearm several times at the victim-notably, with some shots fired while the victim was on the ground, as testified to by Mr. Scott. Witnesses' identifications of Defendant as the shooter and their accounts of the events, which are corroborated by surveillance footage, supported a finding beyond a reasonable doubt that Defendant was the individual who aimed a gun and discharged it at the victim. Surveillance video depicted Defendant exiting the bar but then returning and shooting the victim. Furthermore, at trial, Defendant argued he shot the victim in self-defense. Accordingly, in viewing the evidence in a light most favorable to the prosecution, we find that the evidence sufficiently supported Defendant's conviction for second degree murder. We further conclude that Defendant failed to carry his burden of proving by a preponderance of the evidence that the mitigating factors necessary to reduce his conviction to manslaughter were present.
Therefore, we find that the trial court did not err in denying Defendant's post-verdict judgment of acquittal.
Excessive Sentence
In this assignment of error, Defendant argues that his life sentence for his second degree murder conviction is excessive. He argues that during the hearing on the motion to reconsider, he presented evidence to show that he suffered from a mental disability that made him prone to committing criminal acts. Defendant avers that a life sentence for an offense, which the evidence dictated to be a manslaughter conviction, is excessive and an Eighth Amendment violation. He contends that, although life imprisonment is mandated by the statute, his sentence may still be unconstitutionally excessive because the court is not bound by statute when the facts and circumstances of the conviction indicate that a lower sentence would be more appropriate under State v. Dorthey .[9]
The State responds that Defendant's sentence for second degree murder is within the sentencing guidelines and is not excessive. The State notes that mandatory sentences are presumed constitutional, and in order for a departure from the mandatory sentence to be warranted, Defendant must show that he is somehow exceptional. The State also avers that when the sentence is mandatory, the trial court need not justify its sentence using the factors iterated in La. C.Cr.P. art. 894.1. The State points out that Defendant did not present evidence that he was exceptional, for purposes of sentencing, and there is no merit to his claim. The State notes that contrary to Defendant's assertions, there was no testimony that Defendant had difficulty with controlling his anger due to mental instability or that such a condition made him susceptible to committing criminal acts. The State avers that intoxication is not a mental instability, and that any such state did not make him susceptible to committing criminal acts, as Defendant fled from the scene and concealed the gun used in the shooting. The State further notes that this argument was never presented at trial.
Defendant was sentenced to life imprisonment without the benefit of probation, *1269 parole, or suspension of sentence for his second degree murder conviction and 40 years without the benefit of probation, parole, or suspension of sentence to run consecutively with each other. During the sentencing hearing, the trial court noted:
Over the past two-and-a-half years, I've observed Mr. Thompson come into my courtroom for various pre-trial proceedings, and I observed him during the two-day trial. And after the jury reached its verdict, my first thoughts were for two children that are going to grow up without a father and his son, a boy, who's going to grow up without his father because on Christmas night Mr. Thompson made a decision to take the life of another human being. And the conclusion, having observed the same evidence that the jury viewed, that I came to was that Mr. Thompson felt disrespected and that he left the bar to go to his vehicle to retrieve a weapon, and he used that weapon to get respect.
And during the course of the trial, I would glance at Mr. Thompson, and at times I'd look into his eyes and I'd see someone who was indifferent to human life, the person who pulled the trigger that night. And other times I looked at Mr. Thompson in his eyes and I saw a frightened boy.
To the family, the Scott family and the Thompson family, this is a tragedy, and it's a tragedy that happens far too often in our world. Please, please, spread your experience. Share your experience with your family, your friends, and your community that-not to allow anger and fear become a motivation or any reason to cause violence on another person.
Mr. Thompson, I hope you'll have the opportunity to share your experience with your son and that he will learn that a split-second decision made out of anger and rage can alter his life.
The primary purpose of this Court is to ensure that the public is safe.
Defendant filed a motion to reconsider sentencing, arguing that his consecutively imposed life sentence and 40-year sentence were constitutionally excessive. He contended that there were mitigating factors that the court "may wish to consider with respect to [his] sentence."
At the hearing on the motion to reconsider, Defendant called his sister, Kawanda Thompson, as a witness. She testified that she took Defendant for mental health treatment when he was approximately 22 years old. She also described that Defendant has an issue in school. She elaborated that Defendant was on Social Security because of his mental health issues. Ms. Thompson testified regarding the circumstances surrounding Defendant's previous conviction for carjacking. She explained that "something strange" was going on with Defendant, and "they laced him up with PCP." She described that Defendant "flagged a man down" to ask to take him to the hospital and ended up taking the car himself. She testified that Defendant was suffering from an overdose from a drug that had been given to him without his consent.
After Ms. Thompson's testimony, Defendant argued that his 40-year maximum sentence on his conviction for obstruction of justice was excessive. He also admitted that the sentence on the murder case is a mandatory sentence, but he noted that "in the event that that sentence might be overturned on appeal," he "ask[ed] the Court to reconsider the sentence on the obstruction." The court ruled that it:
appreciates the testimony of Ms. Thompson to provide a little information about her brother, because when I imposed sentence, I recognized that I was imposing a consequence for conduct that Mr. Thompson committed but that I was not here to judge him as a person or his life.
*1270 The Court was deeply troubled by the execution-style killing of Mr. Scott that night, and that the public absolutely has to be protected from Mr. Thompson's ability to engage in that conduct. Given the circumstances surrounding the killing, I'm going to deny the request for reconsideration of the sentence.
On appeal, Defendant only challenges the constitutional excessiveness of his life sentence for his second degree murder conviction, not his 40-year sentence for his obstruction of justice conviction.[10] Also, for the first time on appeal, Defendant argues for a downward departure in his mandatory life sentence for his second degree murder conviction.
Defendant failed to argue for a downward departure under Dorthey , supra , in his motion to reconsider sentence.[11] "Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude ... the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." La. C.Cr.P. art. 881.1(E). By failing to raise these arguments in a motion to reconsider sentence, Defendant is limited to a bare review of his sentence for constitutional excessiveness. See , State v. Francois , 17-471 (La. App. 5 Cir. 3/14/18), 242 So.3d 806, 819.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith , 01-2574 (La. 1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson , 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622, writ denied , 05-0244 (La. 12/9/05), 916 So.2d 1048. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson , 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
The penalty for second degree murder is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. La. R.S. 14.30.1(B). A mandatory minimum sentence is presumed constitutional.
*1271 State v. Royal , 03-439 (La. App. 5 Cir. 9/30/03), 857 So.2d 1167, 1174, writ denied , 03-3172 (La. 3/19/04), 869 So.2d 849. Further, Louisiana courts have consistently held that a mandatory sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. State v. Graham , 422 So.2d 123 (La. 1982) ; State v. Lovick , 00-1833 (La. App. 5 Cir. 5/16/01), 788 So.2d 565, 573, writ denied , 01-1836 (La. 5/10/02), 815 So.2d 833.
In Dorthey , supra , the Louisiana Supreme Court recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. In Johnson , supra , the Louisiana Supreme Court re-examined Dorthey and outlined the criteria a defendant must meet in order to show that a mandatory minimum sentence under the Habitual Offender Law is constitutionally excessive. Although Dorthey involved a mandatory enhanced sentence, this Court has applied the principles set out in Dorthey to the review of mandatory life sentences other than those imposed under the Habitual Offender Law. See State v. Temple , 01-655 (La. App. 5 Cir. 12/12/01), 806 So.2d 697, 707, writ denied , 02-234 (La. 1/31/03), 836 So.2d 58.
In order to rebut the presumption that a mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." Johnson , supra . A sentencing court should exercise its authority to declare excessive a mandatory minimum sentence only under rare circumstances. State v. Lindsey , 99-3256 c/w 99-3302 (La. 10/17/00), 770 So.2d 339, 345.
In State v. Boyer , 10-693 c/w 10-694 (La. App. 3 Cir. 2/2/11), 56 So.3d 1119, 1160, the defendant argued that his sentences were constitutionally excessive. The defendant was sentenced to life imprisonment without benefits for his second degree murder conviction. Following sentencing, the defendant objected on the basis of information raised in his pre-sentencing memorandum.[12] In the memorandum, defense counsel gave a detailed account of the defendant's upbringing leading to the time of the shooting. He pointed out the defendant's documented mental health problems. He argued that the defendant suffered a violent and abusive childhood to such a degree that Child Protection Services had to intervene. The defendant was raised in a very dysfunctional family and had only a fifth-grade education. The appellate court found that the defendant failed to meet his burden of proving by clear and convincing evidence that the mandatory life sentence was constitutionally excessive in his case. The court noted that the evidence supported the conclusion that the defendant knew right from wrong when he intentionally killed the victim. The court found that the defendant did not prove himself exceptional by substantially clear and convincing evidence. Therefore, it found no merit to the allegation that he received a constitutionally excessive sentence.
In State v. Francois , 13-616 (La. App. 5 Cir. 1/31/14), 134 So.3d 42, 57, writ denied , 14-0431 (La. 9/26/14), 149 So.3d 261, the defendant similarly argued that his sentence *1272 of life imprisonment at hard labor without benefits was excessive since the evidence only established the lesser offense of manslaughter and not second degree murder. This Court, having already found that a rational trier of fact could have found that the defendant failed to establish the mitigating factors of manslaughter and that the evidence was sufficient for the jury to have found that the defendant was guilty of second degree murder beyond reasonable doubt in earlier assignments of error, found no merit to the defendant's claim. However, in the interest of justice, this Court still reviewed whether the defendant's sentence of life imprisonment at hard labor without benefits for his conviction of second degree murder was excessive. This Court found that the defendant failed to offer any argument or evidence establishing that he was exceptional. It was noted that his argument was limited to the contention that his sentence was excessive solely because he should have been convicted of manslaughter and not second degree murder. Accordingly, this Court found that the trial court did not abuse its discretion in sentencing the defendant to the mandatory minimum sentence of life imprisonment at hard labor without benefits for his conviction of second degree murder.
In the instant case, we find that Defendant fails to show by clear and convincing evidence that his particular circumstances are an exception to the constitutional application of the mandatory sentence. Defendant offered the testimony of his sister at the motion to reconsider hearing, indicating that he had mental health issues, but he did not specify what these issues were. Contrary to Defendant's assertions, Ms. Thompson did not testify that his mental health issues made him prone to committing criminal acts. Rather, she testified regarding a singular instance surrounding his previous carjacking conviction where he was on the influence of drugs without his consent that she alleged was the reason he took the car and committed the crime-to go to the hospital. He did not introduce any concrete evidence of any specific mental illness, such as medical records or social security disability records; instead, he merely introduced anecdotal, non-specific testimony from his sister. This evidence falls even short of the evidence presented in Boyer , which this Court still found insufficient to prove the defendant exceptional by substantially clear and convincing evidence.
Further, Defendant does not cite a single case where a mandatory life sentence imposed on a defendant convicted of second degree murder was found to be unconstitutionally excessive on appellate review. As previously discussed, a rational trier of fact could have found that Defendant failed to establish the mitigating factors of manslaughter, and that the evidence was sufficient for the jury to have found that Defendant was guilty of second degree murder beyond reasonable doubt. Sufficient evidence is present in the record to find that Defendant intentionally shot an unarmed man in close proximity to a large crowd of people. Defendant did not present any convincing evidence to support a downward departure from the mandatory life sentence.
Accordingly, considering the totality of the facts and circumstances of this case, we find that the trial court did not abuse its discretion in sentencing Defendant to the mandatory sentence of life imprisonment at hard labor without benefits for his conviction of second degree murder.
Errors Patent Review
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990), and the following errors were discovered.
*1273 First, Defendant was sentenced to 40 years imprisonment without the benefit of probation, parole, or suspension of sentence for his obstruction of justice conviction. However, La. R.S. 14:130.1[13] does not provide for the restriction of benefits. Thus, Defendant received an illegal sentence due to the restriction of benefits imposed.
When a sentencing error involves the imposition of restrictions beyond what the legislature has authorized in the sentencing statute, the Louisiana Supreme Court has ruled that the appellate courts "should not rely on La. R.S. 15:301.1(A) to correct the error as a matter of law but should correct the sentence on its own authority under La. C.Cr.P. art. 882 to correct an illegal sentence 'at any time.' " State v. Sanders , 04-17 (La. 5/14/04), 876 So.2d 42 (per curiam ).
Accordingly, we amend Defendant's sentence to eliminate the restriction of probation, parole, or suspension of sentence for the entire 40-year sentence for obstruction of justice and affirm the sentence as amended. We also order the 29th Judicial District Court Clerk of Court to transmit notice of this amended sentence to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department. See State v. Richard , 12-310 (La. App. 5 Cir. 4/24/13), 115 So.3d 86, 94, writ denied , 13-1220 (La. 12/2/13), 126 So.3d 497.
Additionally, the Louisiana Code of Criminal Procedure designates that certain crimes will always be designated in the minutes as crimes of violence. Among the crimes that "shall always be designated by the court in the minutes as crimes of violence are: "(3) second degree murder." See La. C.Cr.P. art. 890.3(C). Therefore, one of Defendant's convictions must be designated as a crime of violence in the district court minutes. See State v. Parnell , 17-550 (La. App. 5 Cir. 5/16/18), 247 So.3d 1116 (citing State v. Holloway , 15-1233 (La. 10/19/16), 217 So.3d 343, 346 n.3 ). However, the minute entry does not reflect that this crime was designated as a crime of violence; therefore, on remand, we order the correction of the minute entry.
DECREE
For the foregoing reasons, we affirm Defendant's conviction and sentence for second degree murder. We affirm, as amended, Defendant's sentence for obstruction of justice. Additionally, we remand the matter to the trial court with instructions.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED, AS AMENDED; REMANDED WITH INSTRUCTIONS

During trial, on July 19, 2017, the State entered a nolle prosequi on count three.

Amanda Pertuis with the St. Charles Parish Sheriff's Office Communications Division testified that she oversees the daily functions for the 9-1-1 Center. During her testimony, the 9-1-1 calls from December 26, 2014, were admitted and published to the jury.

Detective Murray was able to identify the victim because of his clothing, a long-sleeve black shirt with some white writing and a hat with a fleur de lis, at approximately 4:22:27 in file 20000400, or camera four. Detective Murray pointed out the victim at 4:25:48, as the "tall individual" with a "white towel" on his head.

In his appeal, Defendant does not contest the sufficiency of the evidence regarding his obstruction of justice conviction. Thus, the sufficiency of the evidence on the obstruction of justice conviction is not before this Court for review.

In his motion for new trial, Defendant argued that the trial court erred in admitting the 9-1-1 call in violation of Crawford v. Washington , 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), an issue not raised on appeal.

Nevertheless, when a defendant in a homicide prosecution claims self-defense, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Reed , 11-507 (La. App. 5 Cir. 2/14/12), 88 So.3d 601, 607, writ denied , 12-644 (La. 9/14/12), 97 So.3d 1014. The relevant inquiry on appeal is whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense. State v. Cassard , 01-931 (La. App. 5 Cir. 2/26/02), 811 So.2d 1071, 1076, writ denied , 02-0917 (La. 12/19/02), 833 So.2d 327.
A homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1). The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18 ; State v. Sparkman , 13-640 (La. App. 5 Cir. 2/12/14), 136 So.3d 98, 106, writ denied , 14-0477 (La. 11/26/14), 152 So.3d 897.
The determination of a defendant's culpability rests on a two-fold test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger. State v. Sinceno , 12-118 (La. App. 5 Cir. 7/31/12), 99 So.3d 712, 720, writ denied , 12-2024 (La. 1/25/13), 105 So.3d 713. The fact-finder determines whether the State negated self-defense beyond a reasonable doubt. State v. Griffin , 14-450 (La. App. 5 Cir. 12/16/14), 167 So.3d 31, 38-39, writ denied , 15-0148 (La. 11/20/15), 180 So.3d 315. Here, based upon the discussion, infra , we find that the State adequately negated the defense of justification beyond a reasonable doubt in this case.

The trial court instructed the jury that, in order to find Defendant guilty of second degree murder, it was required to find that Defendant killed Mr. Scott, and that Defendant acted with specific intent to kill or inflict great bodily harm.

This was the defendant's alternative argument in that matter. He primarily challenged the sufficiency of the evidence used to convict him of second degree murder. Specifically, he argued that the State failed to prove beyond a reasonable doubt that he did not act in self-defense.

State v. Dorthey , 623 So.2d 1276, 1280-81 (La. 1993).

Neither at trial nor on appeal did Defendant challenge the consecutive nature of his sentences.

Nonetheless, a trial court may reduce a presumptively constitutional sentence if it determines the sentence makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime" as applied to a particular defendant. Dorthey , supra . A court may only depart from the mandatory sentence if it finds clear and convincing evidence that would rebut the presumption of constitutionality. State v. Johnson , 97-1906 (La. 3/4/98), 709 So.2d 672, 676. Downward departures from mandatory sentences should only occur in rare cases. State v. Berniard , 03-484 (La. App. 5 Cir. 10/15/03), 860 So.2d 66, 75, writ denied , 03-3210 (La. 3/26/04), 871 So.2d 345. When a defendant seeks a downward deviation from the mandatory sentence, he has the burden to rebut the presumption of constitutionality by showing by clear and convincing evidence that he is exceptional, namely that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. Id.

The defendant was also sentenced to a maximum 99-year sentence plus the five-year enhancement for his armed robbery with a firearm conviction; however, in his memorandum, only the excessiveness of the anticipated mandatory life sentence for the second degree murder was addressed, and he argued that whatever sentence the trial court imposed on the armed robbery with a firearm should be imposed concurrently.

La. R.S. 14:130.1(B)(2) provides that "[w]hen the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both."